**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| FUQUAN S. KHALIF,       : | |
|                               : | Civil Action No. 02-3193 (JLL) |
|            Petitioner,   : | |
|                               : | |
|         v.                : | |
|                               : | **OPINION** |
| ROY L. HENDRICKS, et al.,   : | |
|                               : | |
|            Respondents. : | |
| | |

**APPEARANCES:**

       FUQUAN S. KHALIF, Petitioner <u>Pro</u> <u>Se</u>
       #62004/SBI #741564A
       New Jersey State Prison
       P.O. Box 861
       Trenton, New Jersey 08625

       DEBORAH BARTOLOMEY, Deputy Attorney General
       N.J. Department of Law and Public Safety
       Division of Criminal Justice
       P.O. Box 086
       Trenton, New Jersey 08625-0086
       Attorneys for Respondents

**LINARES, District Judge**

    This matter is before the Court on petitioner Fuquan S. Khalif's application for habeas corpus relief under 28 U.S.C. § 2254. For the reasons stated below, the petition for habeas relief will be denied for failure to make a substantial showing of a federal statutory or constitutional deprivation.

I.   <u>BACKGROUND</u>

A.   <u>Procedural History</u>

Petitioner, Fuquan S. Khalif ("Khalif"), formerly known as Alfred Walker, is presently confined at the New Jersey State Prison in Trenton, New Jersey, serving a life sentence plus 40 years, with a 50-year parole disqualifier.

On January 30, 1991, Khalif was charged in Essex County on an eighteen count indictment, Indictment No. 91-1-437 as follows: (1) two counts of second-degree burglary, <u>N.J.S.A</u>. 2C:18-2 (Counts One and Twelve); (2) three counts of second-degree aggravated assault, <u>N.J.S.A</u>. 2C:12-1b(1)(Counts Two, Five, and Six); (3) three counts of unlawful possession of a handgun, a third-degree offense, <u>N.J.S.A</u>. 2C:39-5b (Counts Three, Eight, and Seventeen); (4) three counts of possession of a handgun for an unlawful purpose, a second-degree offense, <u>N.J.S.A</u>. 2C:39-4a (Counts Four, Nine, and Eighteen); (5) one count of criminal restraint, a third-degree offense, <u>N.J.S.A</u>. 2C:13-2 (Count Seven); (6) third-degree theft, <u>N.J.S.A</u>. 2C:20-7 (Count Ten); (7) one count of terroristic threats, a third-degree offense, <u>N.J.S.A</u>. 2C:12-3 (Count Eleven); (8) one count of purposeful or knowing murder by his own conduct, a capital crime, <u>N.J.S.A</u>. 2C:11-3a(1) or (2)(Count Thirteen); (9) one count of felony murder, a first-degree offense, <u>N.J.S.A</u>. 2C:11-3a(3)(Count Fourteen); (10) one count of attempted murder, a first-degree

2

offense, <u>N.J.S.A</u>. 2C:11-3 and <u>N.J.S.A</u>. 2C:5-1 (Count Fifteen);
and (11) one count of retaliation against a witness, a fourth-
degree offense, <u>N.J.S.A</u>. 2C:28-5b (Count Sixteen).

Pretrial motions were heard on November 4, 1991, by the
Honorable Betty J. Lester, J.S.C.  Khalif's motion to strike
aggravating factor, <u>N.J.S.A</u>. 2C:11-3c(4)(a), a prior conviction
for murder, was denied.  Judge Lester also denied Khalif's motion
for severance and reserved decision on Khalif's motion to
suppress evidence.  The State's motion to withhold the juvenile
victim's records from the defense was also denied.  Jury
selection and further pretrial motions were heard on March 2, 3,
and 4, 1992.

Jury trial before Judge Lester took place on March 4, 5, 6,
9, 10, and 11, 1992.  The jury convicted Khalif on March 13,
1992, on Counts Five, Six, Seven, Eight, Nine, Ten, Eleven,
Twelve, the lesser-included offense of aggravated manslaughter
under Count Thirteen, the capital murder charge, and Counts
Fourteen, Fifteen, Sixteen, Seventeen, and Eighteen.  Khalif was
acquitted of the charges in Counts One through Four.

Judge Lester sentenced Khalif on May 8, 1992, imposing an
aggregate sentence of life imprisonment plus forty years with a
parole bar of fifty years.

Notice of appeal was filed, <u>nunc pro tunc</u>, on Khalif's
behalf by assigned counsel.  The Superior Court of New Jersey,

Appellate Division affirmed Khalif's convictions on January 23, 1995 in a per curiam opinion, except that the court remanded the matter to correct the sentence on Count Six, and so that the Judgment of Conviction could be corrected to reflect the sentencing court's imposition of consecutive sentences rather than concurrent sentences on the convictions for felony murder and attempted murder.  Khalif filed a petition for certification with the Supreme Court of New Jersey.  The petition was denied by order filed on April 27, 1995.

On December 26, 1995, Khalif petitioned the trial court for post-conviction relief ("PCR").  Judge Lester held a PCR hearing on September 16, 1997.  Khalif was represented by counsel.  Judge Lester denied the PCR petition, and Khalif filed a Notice of Appeal, on December 17, 1997, to the Superior Court of New Jersey, Appellate Division.  The Appellate Division granted the motion to file the notice nunc pro tunc on January 5, 1998, but affirmed the trial court's denial of post-conviction relief by per curiam opinion issued on October 29, 1999.  Khalif thereafter petitioned the New Jersey Supreme Court for certification.  On February 16, 2000, the New Jersey Supreme Court denied the petition for certification.

Khalif again applied to Judge Lester for post-conviction relief and the petition was denied on June 5, 2000.  The judge found the petition to be frivolous, and that there was no good

cause to assign counsel for the second post-conviction relief application.  On or about October 17, 2000, Khalif filed a notice of appeal, nunc pro tunc, with the New Jersey Appellate Division, moved for assignment of counsel, and to be permitted to proceed as an indigent.  By order filed December 5, 2000, the Appellate Division granted Khalif's motions to proceed as an indigent and file his notice nunc pro tunc.  The motion for assignment of counsel was denied.  On October 15, 2001, the Appellate Division affirmed Khalif's conviction and denied his second PCR petition, finding Khalif's arguments without sufficient merit to warrant discussion in a written opinion.  Khalif filed a petition for certification with the New Jersey Supreme Court on or about November 12, 2001, which was denied on January 28, 2002.  The matter is now before this Court on Khalif's application for habeas relief, pursuant to 28 U.S.C. § 2254, filed on or about July 2, 2002.

The State respondents filed their answer on November 25, 2002, together with the state court record.  Khalif thereafter submitted a traverse to the answer on December 31, 2002.[1]

_____

[1]  In Khalif's traverse, he argues that his federal habeas petition was timely filed contrary to respondents' assertion otherwise.  However, the Court, in reviewing the respondents' answer, could find no affirmative defense raised by the State that the federal habeas petition is time-barred under 28 U.S.C. § 2244(d).  In any event, the Court finds that the petition was timely filed.

B.  <u>Factual Background</u>

The following rendition of facts is taken from the state court record and the state appellate court opinions.

On September, 7, 1990, Khalif went to 493 Irving Turner Boulevard in Newark, New Jersey, which was the basement apartment of Khalif's seventeen year old cousin, Francois Walker (Fran), her twenty-two year old fiancé, Lamont Booker, and their two children.  Khalif slipped into the apartment through a window behind where Lamont was standing in the kitchen talking to Fran, who was in the bathroom shower.  Lamont turned and saw Khalif with a .22 caliber gun.  Khalif then fired a warning shot from the gun and forced Lamont out of the room and into the bedroom where Lamont's daughter was located.  Lamont kissed his daughter and was then forced to leave the room with the gun to his head. Lamont left the apartment.

After leaving the apartment, Lamont ran around the corner and found his friends.  They returned to the apartment and surrounded the house, some at the front door and others at the back.  Lamont knocked on the door and was let inside by Fran. Fran told Lamont that Khalif had left.  Lamont joined his friends outside and unsuccessfully canvassed the area looking for Khalif. When Lamont returned to the apartment, Fran was crying.[2]

---

[2]  Fran told Lamont that while Lamont was outside the apartment, Khalif had raped her.  This statement was kept from the jury.

6

One week later, on September 14, 1990, around 1:00 a.m.,
Khalif returned to Fran and Lamont's apartment.  Fran was in the
kitchen with one child, and Lamont was in a bedroom with the
other child and a young friend.  Fran let Khalif into the
apartment when he knocked at the door.  Khalif insisted that the
friend leave the apartment.  Lamont told the child to contact his
father for a ride home.

Khalif then sat in an armchair in the apartment.  Lamont,
who was walking outside with the friend, attempted to retrieve
his keys from the kitchen to let himself back in the apartment.
Khalif, seeing Lamont with the keys, demanded he leave them.
Lamont refused and Khalif moved aside his jacket showing a .38
caliber handgun tucked into his belt.  Lamont did not hand over
the keys until Khalif began pulling out the gun.

When Lamont left with the child, Khalif locked the door
behind them.  Lamont looked for his friends outside, but they
were not present.  Uneasy, Lamont went back to stand outside his
apartment where he heard screaming.  Lamont later learned that
Khalif had put a movie, The Texas Chainsaw Massacre, in the
video-cassette recorder.  Since Lamont thought someone in the
apartment was screaming, he started pounding on the window with
his fist.  Khalif eventually came to the front door where he told
Lamont to stop banging.

The child noticed that Khalif had the gun in his hand, so Lamont and the child went up the street and telephoned the police.  Two police officers arrived in a patrol car, but refused to enter the apartment because they decided to respond to another call.  Lamont and the child walked back to the apartment.  The screaming was still continuing so Lamont resumed banging on the windows.  Khalif came out with the gun drawn.  Lamont and the child began to run down the street, and Khalif fired at them forcing them into a bar.

The two telephoned the police again and also the home of Fran's stepmother, Shirley Walker.  Patricia DuBose, who answered the phone, was told to hurry over because there was an emergency and to "bring a man down."  Help arrived at the apartment and, upon determining that Fran was inside and scared, they went to the Newark police station and returned with two officers.  At the same time, Lamont also arrived with two officers.  After surrounding the house, police were able to enter the apartment when Fran opened the front door.  Khalif was placed under arrest.

Khalif's .38 caliber handgun was found at the rear of the house under the back stairs.  Khalif was taken to the South Precinct station where he was charged with aggravated assault, unlawful possession of a weapon, possession of a weapon for an unlawful purpose and criminal restraint of Francois Walker. Khalif threatened Fran and a relative while in a holding cell.

8

On September 17, 1990, Khalif was released on bail, conditioned upon Khalif having no contact with either Francois Walker or Lamont Booker.  Upon learning of Khalif's release, Fran, Lamont and a relative moved to 10 Hill Street.  Thereafter, the relative moved to East Orange and Fran and Lamont moved into Lamont's mother's apartment at 29 Kent Street.  Unfortunately, a neighbor of the couple told Khalif their address when Khalif misled the neighbor to believe that he had forgotten the address.

On October 22, 1990, Khalif gained access to the Kent Street apartment of Lamont and Fran by posing as a superintendent. Lamont's 12 year old sister was also in the apartment.  When Lamont opened the door, he was confronted by Khalif who was masked, in torn blue jeans, a leather jacket and holding a .22 caliber handgun.  Khalif forced his way into the apartment and commanded Lamont to call for Fran.  Khalif forced Lamont and Fran into the bathroom and pointed the gun at them.  He accused the two of abandoning him and became more infuriated when Lamont attempted to appease him.  Fran offered to drop the charges against Khalif, but was rebuffed.

Khalif told Lamont and Fran he could have killed them the night before with an Uzi, but was unable to procure it.  He then forced Fran and Lamont onto their knees to "pray."  Lamont attempted to wrestle the gun from Khalif when Khalif lit a cigarette, but was shot in the head.  Lamont lunged out of the

9

bathroom, fell out of the second-floor bedroom window and was chased down the street by Khalif.  Lamont's sister ran through the house and found Fran on the bathroom floor, slumped over and bleeding.  Khalif had shot Fran in the head prior to exiting the house.

Lamont's sister removed the children from the house as police were arriving.  Lamont had found refuge in a nearby supermarket.  Khalif hid in a nearby house, waited a while, and took a cab home.  He then discarded the clothes he was wearing and went to Asbury Park.

Fran died two days later at University Hospital; the cause of death was the gunshot wound to her brain.  Fran was killed by a different bullet than the one that hit Lamont.

The police received a tip that Khalif was in Asbury Park, and he was later apprehended there.  The gun used in the shooting was found on Khalif at that time.

## II.   CLAIMS FOR HABEAS RELIEF

Khalif raises the following claims in his federal habeas petition:

Ground 12a:  The trial court erred in denying Khalif's motion for severance since the indictment contained charges occurring on three separate dates and at two separate locations.

Ground 12b:  It was harmful error to deny Khalif's motion for a mistrial after the prosecutor elicited testimony from two

witnesses about other crimes and prior bad acts and for using the term "murder" in his summation.

Ground 12c:  It was harmful error to admit the redacted portion of defendant's statement and Khalif was denied effective assistance of counsel when counsel called the prosecutor's investigator who gave the damaging testimony about defendant's statement.

Ground 12d:  The convictions of burglary and felony murder were against the weight of evidence, and the trial court erred in denying the motion for a new trial.

Ground 12e:  It was harmful error to admit a photograph of the victim bleeding and being treated by emergency medical services technicians.

Ground 12f:  The jury instructions were confusing and the trial judge failed to instruct the jury on attempted passion/provocation manslaughter as a lesser-included offense of attempted murder, and self-defense on transferred intent murder.

Ground 12g:  Khalif was denied effective assistance of counsel when counsel failed to request a Miranda hearing before calling the prosecutor's investigator, who gave damaging testimony regarding Khalif's statement, which was the product of a custodial interrogation.

Ground 12h:  The trial judge erred in instructing the jury

that they could infer that the defendant's purpose was to take a life if they found he killed the victim with a deadly weapon. This instruction violated Khalif's Fourteenth Amendment right to due process by failing to inform the jury adequately that the inference was merely a permissible inference that could be overcome once it is made.  The instruction served to lessen the State's burden of proof.

Ground 12i:  The prosecutor's opening statement contained inflammatory comments, not supported by the evidence, and created substantial prejudice to defendant's right to a fair trial.

Ground 12j:  Ineffective assistance of appellate counsel.

Ground 12k:  The trial judge failed to instruct the jury on the self defense justification.

Ground 12l:  The cumulative errors demand that defendant be retried.

Ground 12m:  Khalif was denied effective assistance of counsel where trial counsel failed to timely file a motion to quash the indictment.

Ground 12n:   Khalif is entitled to an evidentiary hearing under N.J. Court Rule 3:22-10 to resolve his claims for relief.

### III.  EXHAUSTION REQUIREMENT

It is well established that a state prisoner applying for a writ of habeas corpus in federal court must first "exhaust[] the remedies available in the courts of the State," unless "there is

an absence of available State corrective process[] or ... circumstances exist that render such process ineffective ... ." 28 U.S.C. § 2254(b)(1); see also 28 U.S.C. §2254(c); Rose v. Lundy, 455 U.S. 509, 510 (1982); Johnson v. Pinchak, 392 F.3d 551, 556 (3d Cir. 2004).  A petitioner exhausts state remedies by presenting his federal constitutional claims to each level of the state courts empowered to hear those claims, either on direct appeal or in collateral post-conviction proceedings.  See, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 847 (1999) ("requiring state prisoners [in order to fully exhaust their claims] to file petitions for discretionary review when that review is part of the ordinary appellate review procedure in the State"); Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997) (collateral attack in state court is not required if the petitioner's claim has been considered on direct appeal), cert. denied, 532 U.S. 919 (2001); 28 U.S.C. § 2254(c) ("An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.")  Once a petitioner's federal claims have been fairly presented to the state's highest court, the exhaustion requirement is satisfied.  Castille v. Peoples, 489 U.S. 346, 350 (1989); Picard v. Connor, 404 U.S. 270, 275 (1971).

13

The petitioner generally bears the burden to prove all facts establishing exhaustion.  <u>Toulson v. Beyer</u>, 987 F.2d 984, 987 (3d Cir. 1993).  This means that the claims heard by the state courts must be the "substantial equivalent" of the claims asserted in the federal habeas petition.  <u>Picard</u>, 404 U.S. at 275.  Reliance on the same constitutional provision is not sufficient; the legal theory and factual basis must also be the same.  <u>Id.</u> at 277.

Here, the State does not assert that any of the claims now raised by Khalif in this federal habeas petition are unexhausted.  However, to the extent any of the claims were not exhausted in state court, this Court may opt to review such claims, and deny them on the merits pursuant to 28 U.S.C. § 2254(b)(2).  Section 2254(b)(2) provides that "[a]n application for writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."  Here, the respondents have fully addressed each of petitioner's claims on the merits.  Thus, for the reasons discussed below, the Court will deny this petition on the merits, pursuant to 28 U.S.C. § 2254(b)(2), because "it is perfectly clear that an applicant does not raise even a colorable federal claim."  <u>Lambert</u>, 134 F.3d at 514-15.

IV.  <u>STANDARD GOVERNING REVIEW OF § 2254 CLAIMS</u>

The Court recognizes that a <u>pro se</u> pleading is held to less stringent standards than more formal pleadings drafted by

attorneys.  Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  Thus, a pro se habeas petition should be construed liberally and with a measure of tolerance. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Duarte v. Hurley, 43 F. Supp.2d 504, 507 (D.N.J. 1999).  Because Khalif is a pro se litigant, the Court will accord his petition the liberal construction intended for pro se petitioners.

Under § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), federal courts in habeas matters must give considerable deference to determinations of the state trial and appellate courts.  See 28 U.S.C. § 2254(e); Duncan v. Morton, 256 F.3d 189, 196 (3d Cir.), cert. denied, 122 S.Ct. 269 (2001); Dickerson v. Vaughn, 90 F.3d 87, 90 (3d Cir. 1996)(citing Parke v. Raley, 506 U.S. 20, 36 (1992)).  Section 2254(d) sets the standard for granting or denying a habeas writ:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
>     (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>     (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

15

In <u>Williams v. Taylor</u>, 529 U.S. 362 (2000), the Supreme Court explained that subsection (d)(1) involves two clauses or conditions, one of which must be satisfied before a writ may issue.  The first clause, or condition, is referred to as the "contrary to" clause.  The second condition is the "unreasonable application" clause.  <u>Williams</u>, 529 U.S. at 412-13.  In the "contrary to" clause, "a federal court may grant the writ if the state arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  <u>Id</u>.  Under the "unreasonable application" clause, a federal court may grant the writ if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of [the petitioner's] case."  <u>Id</u>. at 413.  Habeas relief may not be granted under the "unreasonable application" condition unless a state court's application of clearly established federal law was objectively unreasonable; an incorrect application of federal law alone is not sufficient to warrant habeas relief.  <u>Id</u>. at 411.  <u>See also</u> <u>Werts v. Vaughn</u>, 228 F.3d 178, 197 (3d Cir. 2000), <u>cert</u>. <u>denied</u>, 532 U.S. 980 (2001); <u>Matteo v. Superintendent, SCI Albion</u>, 171 F.3d 877, 891 (3d Cir. 1999), <u>cert</u>. <u>denied</u> <u>sub</u> <u>nom</u> <u>Matteo v. Brennan</u>, 528 U.S. 824 (1999).

16

Consonant with <u>Williams</u>, the Third Circuit has held that §
2254(d)(1) requires a federal habeas court to make a two step
inquiry of the petitioner's claims.  First, the court must
examine the claims under the "contrary to" provision, identify
the applicable Supreme Court precedent and determine whether it
resolves petitioner's claims.  <u>See</u> <u>Werts</u>, 228 F.3d at 196-97;
<u>Matteo</u>, 171 F.3d at 888-891.  If the federal court determines
that the state court's decision was not "contrary to" applicable
Supreme Court precedent, then the court takes the second step of
the analysis under § 2254(d)(1), which is whether the state court
unreasonably applied the Supreme Court precedent in reaching its
decision.  <u>Werts</u>, 228 F.3d at 197.

This second step requires more than a disagreement with the
state court's ruling because the Supreme Court would have reached
a different result.  <u>Id</u>.  AEDPA prohibits such *de novo* review.
Rather, the federal habeas court must determine whether the state
court's application of the Supreme Court precedent was
objectively unreasonable.  <u>Id</u>.  In short, the federal court must
decide whether the state court's application of federal law, when
evaluated objectively and on the merits, resulted in an outcome
that cannot reasonably be justified under existing Supreme Court
precedent.  <u>Id</u>.; <u>see also</u> <u>Jacobs v. Horn</u>, 395 F.3d 92, 100 (3d
Cir. 2005).

Finally, federal courts are required to apply a "presumption of correctness to factual determinations made by the state court." Id.; see also 28 U.S.C. § 2254(e)(1). The Third Circuit has ruled that this presumption of correctness based upon state court factual findings can only be overcome by clear and convincing evidence. See Duncan, 256 F.3d at 196 (*citing* 28 U.S.C. § 2254(e)(1)). Consequently, a habeas petitioner "must clear a high hurdle before a federal court will set aside any of the state court's factual findings." Mastracchio v. Vose, 274 F.3d 590, 597-98 (1st Cir. 2001).

V.   ANALYSIS

A.   The Severance Issue

In Ground 12a of his petition, Khalif contends that the trial court erred in denying the defense motion for severance since the indictment contained charges occurring on three separate dates and two different locations. Khalif argues that "he was prejudiced by his trial of multiple incidents since the jury was left with impression that petitioner was predisposed to commit violent crimes." He further contends that the prejudice that resulted from the joinder outweighed any probative value. The incidents would not have been admissible under Evid.R. 55 (N.J.R.E. 404(b)) to prove some other fact in issue, if the October 22, 1990 incident was tried separately. Khalif states that only the September 14, 1990 incident (not the September 7,

18

1990 incident) was alleged to be the motive for the October 22, 1990 shooting.  Khalif also claims that his acquittal on the counts involving the first incident does not negate the prejudicial impact of having one trial on separate incidents.  He argues that the jury's verdict could have been the result of a compromise.  Accordingly, Khalif contends that the denial of his motion for severance violated his right to due process. (Petition, ¶ 12a).

The State notes that this claim was presented on direct appeal, and that the Appellate Division found that the trial judge did not abuse her discretion in declining to sever the charges.  Further, the Appellate Division noted that petitioner suffered no prejudice from the ruling.  Thus, the State contends that Khalif has not demonstrated the state courts' decision to be so arbitrary as to violate due process.  (Resp. Answer at pp.5-6).

In its opinion, the Appellate Division reviewed the trial judge's ruling.  In particular, the trial judge denied the motion for severance on the following grounds:

> The Defense, for the most part, concedes that, if evidence of other offenses would be admissible under Evidence Rule 55, the cases may be properly joined.  Other assaults upon the same victim are admissible to prove a defendant's intent, ill will, and motive.
>
> The facts surrounding the September 14th incident strongly suggest motive to kill Booker and Fransoir Walker, if not because of their filing of the charges against the

19

> Defendant, but because of their status, certainly, as
> witnesses against him.
>
> The evidence of prior assaultive behavior is particularly
> relevant in this case where a defendant claims the defense
> of accident, and there are other decisions of the Court on
> that point.

(RE25 at 18:15-19:3).[3]  The trial judge further found that "[t]he

potential for prejudice by misuse of Rule 55 evidence is, of

course, lessened where culpability is the major issue, as, in my

opinion, it would be at this trial."  (RE25 at 19:12-14).

On direct review, the Appellate Division noted that a trial

court has ample discretion under R. 3:15-2 to order separate

trials on counts of an indictment if a party is prejudiced by

their joinder.  The court cited numerous cases in state law on

this issue.  (RE20 at p. 9).  The court also commented that a

trial court facing this issue of whether joinder of counts is

prejudicial must consider "'whether, assuming the charges were

tried separately, evidence of the offenses sought to be severed

would be admissible under Evid.R. 55 [N.J.R.E. 404(b)][4] in the

_____

[3]  "RE" refers to Respondents' appendix and state court
record submitted with their answer to this action.

[4]  Evid. R. 55 (N.J.R.E. 404(b)) states that:

> evidence that a person committed a crime or civil wrong
> on a specified occasion, is inadmissible to prove his
> disposition to commit a crime or civil wrong as the
> basis for an inference that he committed a crime or
> civil wrong on another specified occasion but ... such
> evidence is admissible to prove some other fact in
> issue including motive, intent, plan, knowledge,
> identity, or absence of mistake or accident.

trial of the remaining charges.'" State v. Oliver, 133 N.J. 141, 151 (1993)(quoting State v. Pitts, 116 N.J. 580, 601-02 (1989)). (RE20 at p. 9).  The Appellate Division specifically found that Khalif was not prejudiced by the joinder of the counts because even if the trial judge had severed the counts, "evidence of the offenses alleged to have occurred in September would have been admissible in the trial of the October charges."  (RE20 at p. 10).

In reviewing Khalif's claim, this Court finds that the state court's ruling was based solely on state law and state rules of procedure and evidence.  Generally, matters of state procedural law are not reviewable in a federal habeas petition.  The Supreme Court has stated that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).  This is generally true even where the state court incorrectly applied state law.  Id. at 71.  Rather, a federal habeas claim will lie only where a state court determination violated some federally protected right.  Id. at 68.  The Third Circuit likewise stated:

> Our review of a federal habeas corpus petition is limited to remedying deprivations of a petitioner's federal constitutional rights.  We can take no cognizance of non-constitutional harm to the defendant flowing from a state's violation of its own procedural rule, even if that rule is intended as a guide to implement a federal constitutional guarantee.

Wells v. Petsock, 941 F.2d 253, 256 (3d Cir. 1991), cert. denied,
505 U.S. 1223 (1992); see also Smith v. Zimmerman, 768 F.2d 69,
73 (3d Cir. 1985)("a 'mere error of state law' is not a denial of
due process").

Here, it is plain that Khalif was not denied due process or
other federally protected right.  The record clearly indicates
that the trial judge had ample discretion in whether to sever any
of the counts, and that the court correctly applied state law and
rules of evidence in determining that Khalif was not prejudiced
by the joinder of the counts involving the September incidents,
because these offenses would have been admissible in a trial of
the October charges.  The Appellate Division also found this
claim to be without merit.

Therefore, Khalif has failed to establish any due process
violation in the trial court's denial of his motion for severance
and he is not entitled to federal habeas relief on this ground.

B.   The Motions for Mistrial

Next, Khalif claims that it was harmful error for the trial
court to deny his motions for a mistrial after the prosecutor had
elicited testimony from two state witnesses as to defendants'
other crimes and prior bad acts.  As to the first witness, Lamont
Booker, an Evid. R. 8 hearing was held before his testimony to
ensure that the prosecutor would not elicit testimony about an
allegation that Fransoir Walker was raped by Khalif on September

22

7, 1990.  The judge also cautioned Booker about alluding to this allegation during his testimony.  However, the court allowed the prosecutor to question Booker as to how she looked upon his return to the apartment, but not as to what she may have told him.  Booker stated that "She looked like somebody did something to her."  (RE29 at 61:2).  Defense counsel immediately objected and moved for a mistrial.  The judge denied the motion finding that the response was fairly innocuous and did not suggest other crimes evidence.  (RE29 at 63:10-14).  However, the judge did relent to defense counsel's request for a curative instruction, and told the jury to disregard Booker's last statement as unresponsive to the question.[5]  (RE29 at 63:18-64:23).

The second witness, Gabrielle Walker, testified that she had seen Khalif with a gun before the incident of September 14, 1990. Defense counsel had objected and requested a mistrial on the grounds that the response suggests other criminal activity and was highly prejudicial.  The trial court found that the prejudicial impact of the testimony outweighed any probative value and precluded the State from presenting evidence that Khalif may have carried a gun on prior occasions.  However, no curative instruction was given the jury and the motion for a mistrial was denied.

---

[5]  The trial judge felt that a curative instruction would "unnecessarily highlight[] something that the Jury would not otherwise attach that much significance to."  (RE29 at 64:2-4).

23

Khalif also contends that a mistrial was warranted when, during summation, the prosecutor made reference to Khalif's use of the term "murder" in his police statement.

On direct appeal, the Appellate Division found that the trial judge gave appropriate instructions to the jury and that the jury is presumed to have followed these instructions, citing State v. Winter, 96 N.J. 640, 648-49 (1984); State v. Manley, 54 N.J. 259, 271 (1969). As to the prosecutor's comment on summation, the Appellate Division stated that it was

> satisfied that [the prosecutor] had every right to note that defendant had used the term murder in describing the killing of Fran. It was a fair comment on the evidence. A prosecutor may comment on the facts in evidence and the reasonable inferences that can be drawn therefrom. State v. Perry, 65 N.J. 45, 48 (1974). Moreover, the trial judge again, gave an appropriate instruction. We find no error in denying defendant's motion for mistrial.

(RE20 at p. 10).

These state court rulings were based solely on state law and rules of procedure and evidence which are not reviewable in a federal habeas petition. Estelle, 502 U.S. at 67-68. Here, it is plain that Khalif was not denied due process or other federally protected right. The record clearly indicates that the trial judge carefully precluded the witnesses from testifying as to other crimes, and had given adequate curative instructions to the jury even though the court did not find them necessary. Indeed, the Appellate Division found these claims to be without merit. Therefore, Khalif has failed to establish any due process

24

violation or undue prejudice that resulted in a manifest injustice or an unfair trial with respect to the statements made by these two witnesses.  He is not entitled to federal habeas relief on this ground.

As to the prosecutor's reference during his summation to Khalif's use of the term "murder", the Court finds no basis for habeas relief.  Under U.S. Supreme Court precedent, where a prosecutor's opening or closing remarks are challenged in habeas, "[t]he relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)).  In evaluating the likely effect of improper comments, a court may consider whether the improper comments were invited by or responsive to prior comments by opposing counsel. Darden, 477 U.S. at 181-82.  Thus, "Supreme Court precedent counsels that the reviewing court must examine the prosecutor's offensive actions in context and in light of the entire trial, assessing the severity of the conduct, the effect of the curative instructions, and the quantum of evidence against the defendant." Moore v. Morton, 255 F.3d 95, 107 (3d Cir. 2001).

Here, as found by the Appellate Division, the prosecutor's comment during summation was a "fair comment on the evidence." (RE20 at p. 10).  The court also determined that the trial judge

25

gave an appropriate instruction to the jury.  (<u>Id</u>.).  This Court also finds that the prosecutor's comment was consistent with the evidence presented at trial, and did not unfairly prejudice petitioner.  Moreover, the one remark during summation did not so infect the trial with unfairness as to make the resulting conviction a denial of due process.  The decision of the Appellate Division is not contrary to, and does not involve an unreasonable application of, clearly established federal law nor is it based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Accordingly, this claim will be denied.

C.   <u>Admission of Evidence Issues</u>

In Grounds 12c and 12e, Khalif claims that it was harmful error for the trial court to admit the redacted portion of Khalif's statement made to the police, and to admit a photograph of the victim bleeding and being treated by EMT personnel.

1.   *Redacted Portion of Statement*

Khalif's statement to the police was introduced by defense counsel to show that defendant did not intend to kill Fran Walker.  However, on cross-examination of the police investigator, the prosecutor sought to introduce a crossed out portion of the same statement, in which Khalif said: "I meant for it to hit Lamont."  Defense counsel objected, but the trial judge allowed the whole statement to be introduced.  The court noted

26

that the statement was offered in the defendant's case, not the
State's case in chief.  The court stated:

> Since you are the offering party, and the entire statement
> is now in the presence of the Jury, including that which is
> favorable to you and that which may not be, you're not in
> any position, it seems to me, at this point, to argue
> whether the Defendant adopted this statement. ...
>
> ... It doesn't require any guessing or interpretation, the
> words are clearly there.  It is for the Jury to decide what
> they think it means.  The fact that he made that deletion or
> had a second thought as to what he was going to say, it's
> for them to decide, but I think you have waived any argument
> you may have had by introducing the statement on your case.

(RE36 at 49:19-50:1).  On direct appeal, the Appellate Division
found that the statement was admitted as contrary to the rest of
Khalif's statement so that the jury would have all that was said.
It also contradicted Khalif's assertion that the shooting was an
accident.  The court further stated:

> Moreover, had the statement been oral instead of written,
> once the words were said they would have been admissible,
> even if defendant disavowed them.  Evid.R. 63(7) (N.J.R.E.
> 803(b)(1)).  The fact that the statement was transcribed and
> defendant disavowed only this portion did not make the words
> uttered by defendant any less admissible against him.  A
> trial judge has considerable discretion with respect to
> rebuttal testimony.  State v. Conyers, 58 N.J. 123, 135
> (1971).  We find no abuse of discretion here.

(RE20 at pp. 10-11).

Federal courts must afford the states deference in its
determinations regarding evidence and procedure.  See Crane v.
Kentucky, 476 U.S. 683, 690 (1986)("we have never questioned the
power of the States to exclude evidence through the application
of evidentiary rules that themselves serve the interests of

fairness and reliability, even if the defendant would prefer to see that evidence admitted").  It is well-established that "a state court's misapplication of its own law does not generally raise a constitutional claim.  The federal courts have no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." Smith v. Horn, 120 F.3d 400, 414 (3d Cir. 1997)(citations omitted), cert. denied, 522 U.S. 1109 (1998).

However, evidentiary rulings may violate due process when the petitioner "was denied fundamental fairness at trial." Hutchins v. Hundley, 1991 WL 167036 at *4 (D.N.J. Aug. 22, 1991)(Wolin, J.)(citations omitted); see also Kontakis v. Beyer, 19 F.3d 110, 120 (3d Cir. 1994), cert. denied, 513 U.S. 881 (1994); Lisenba v. California, 314 U.S. 219, 228, 236 (1941)(holding that state court's evidentiary rulings may form the basis for habeas relief when they "so infused the trial with unfairness as to deny due process of law").

The appropriate inquiry is "whether the claimed error of law is a fundamental defect which inherently results in a complete miscarriage of justice or in an omission inconsistent with the rudimentary demands of fair procedure." Hutchins, 1991 WL 167036 at *4 (citing United States v. De Luca, 889 F.2d 503, 506 (3d Cir. 1989), cert. denied, 496 U.S. 939 (1990))(other citations omitted).  The Supreme Court has further stated that "an

otherwise valid conviction should not be set aside if the
reviewing court may confidently say on the whole record that the
constitutional error was harmless beyond a reasonable doubt."
Delaware v. Van Arsdall, 475 U.S. 673, 681 (1986).  An error is
not harmless if "it aborts the basic trial process or denies it
altogether."  Hutchins, 1991 WL 167036 at *5 (citing Rose v.
Clark, 478 U.S. 570, 578 n.6 (1986)).

        In this case, the Court finds that the state court's
evidentiary ruling did not violate Khalif's right to due process.
The trial court committed no errors of a constitutional dimension
and a review of the whole record demonstrates that the trial
process was fundamentally fair.  Moreover, it is clear that the
statement was admitted by the defense, not the State, and the
crossed-out portion would have been admissible even if disavowed
by Khalif much like an oral statement would if later disavowed.
Further, there is no showing that the state court determinations
"resulted in a decision that was contrary to, or involved an
unreasonable application of, clearly established Federal law, as
determined by the Supreme Court of the United States," or
"resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence presented in
the State court proceeding."  Accordingly, this ground for a writ
of habeas corpus will be denied.

2.  *Photograph of Fran Walker*

Khalif also objected to the admission of the photograph of Fran Walker as inflammatory.  At trial, the court reviewed this picture with others to determine whether there were other photos of the crime scene that would depict the positions in the apartment.  While there were other pictures of the bathroom area, the one introduced by the State was the only photo to show the body and positioning of the body.  The trial judge further remarked that the photo was not a "gory or gruesome" picture.  She found no prejudicial effect from the photograph.  (RE31 at 45:8-46:10).  On appeal, the Appellate Division found that the "admissibility of photographs of the victim of a crime is left to 'the discretion of the trial court, and the exercise of its discretion will not be reversed in the absence of a palpable abuse thereof.' State v. McDougald, 120 N.J. 523, 582 (1990)." (RE20 at p. 12).  The court found no abuse of discretion.

Normally, a writ of habeas corpus will only be granted on erroneous state evidentiary rulings if the challenged evidence is a crucial or highly significant factor in the context of the entire trial.  Thomas v. Lynaugh, 812 F.2d 225, 230 (5th Cir.), cert. denied, 484 U.S. 842 (1987).  However, the erroneous admission of evidence that is relevant, but excessively inflammatory, might rise to the level of a constitutional violation.  See, e.g., United States ex rel. Mertz v. New Jersey,

30

423 F.2d 537, 539-40 (3d Cir. 1970); Dudley v. Duckworth, 854 F.2d 967, 972 (7th Cir. 1988), cert. denied, 490 U.S. 1011 (1989); Walker v. Engle, 703 F.2d 959, 968 (6th Cir.), cert. denied sub nom. Marshall v. Walker, 464 U.S. 951 (1983); Osbourne v. Wainwright, 720 F.2d 1237, 1239 (11th Cir. 1983) (per curiam); Panzavecchia v. Wainwright, 658 F.2d 337, 341-42 (5th Cir. 1981). Accordingly, the relative probative and prejudicial value of evidence must be examined in order to determine whether its admission violated Khalif's right to a fair trial.

Not every error in balancing probative value against prejudicial effect "amount[s] to error which rises to constitutional dimensions."  See United States ex rel. Mertz, 423 F.2d at 539-40.  In Bisaccia v. Attorney Gen. of New Jersey, 623 F.2d 307 (3d Cir.), cert. denied, 449 U.S. 1042 (1980), the Third Circuit identified at what point such an error in balancing might be cognizable in a habeas corpus proceeding.  Where relevant probative evidence "is greatly outweighed by the prejudice to the accused from its admission, then use of such evidence by a state may rise to the posture of fundamental fairness and due process of law."  623 F.2d at 313 (quoting United States ex rel. Bibbs v. Twomey, 506 F.2d 1220, 1223 (7th Cir. 1974)).  Accord Osbourne, 720 F.2d at 1239 (error in balancing must be of "such magnitude" as to deny fundamental fairness); United States ex rel. Palmer v. DeRobertis, 738 F.2d 168, 171 (7th Cir.) (when probative value of

31

evidence is "greatly outweighed" by the prejudice to the accused, then use of such evidence may "rise to the posture of the denial of fundamental due process"), cert. denied, 469 U.S. 924 (1984). Therefore, only if the inflammatory nature of the photograph so plainly exceeded its evidentiary worth, a constitutional error has been made.

In making this evaluation, however, the deference given to the trial court is great because, "[l]ike any balancing test, the . . . standard is inexact, requiring sensitivity on the part of the trial court to the subtleties of the particular situation, and considerable deference to the hands-on judgment of the trial judge." United States v. Guerrero, 803 F.2d 783, 785 (3d Cir. 1986). Thus, the state trial judge should be accorded the same deference given federal trial judges, who are in a unique position to assess the relative probative value and inflammatory effect of proffered testimony. Id.

Here, the probative value of the admitted photograph outweighed any potential prejudice. The trial judge expressly found that the photo was not inflammatory in content, and the record shows that the trial judge carefully weighed the probative value of the picture against the risk that its admission would unduly prejudice Khalif. Accordingly, the trial court's decision to allow this one inoffensive photograph into evidence did not violate Khalif's constitutional right to a fair trial. Khalif

32

fails to present a cognizable federal habeas claim, and this ground for relief will be denied.

D.   Ineffective Assistance of Trial Counsel

In Grounds 12c, 12g, and 12m of his petition, Khalif alleges that his trial counsel was ineffective (1) for calling the prosecutor's investigator as a witness who gave damaging testimony about Khalif's statement made during custodial interrogation; (2) for failing to request a Miranda hearing before calling the prosecutor's investigator as a witness; and (3) for failing to file a motion to quash the indictment.

The "clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), is the standard for ineffective assistance of counsel as enunciated in Strickland v. Washington, 466 U.S. 668 (1984).  Under Strickland, a petitioner seeking to prove a Sixth Amendment violation must demonstrate that his counsel's performance fell below an objective standard of reasonableness, assessing the facts of the case at the time of counsel's conduct.  Id. at 688-89; Jacobs v. Horn, 395 F.3d 92, 102(3d Cir. 2005); Keller v. Larkins, 251 F.3d 408, 418 (3d Cir.), cert. denied, 534 U.S. 973 (2001).  Counsel's errors must have been "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 688.  "In any case presenting an ineffectiveness claim, the performance inquiry must be whether

33

counsel's assistance was reasonable considering all the circumstances."  Id.  The Supreme Court further explained:

> Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

Id. at 689 (citations omitted); see also Virgin Islands v. Wheatherwax, 77 F.3d 1425, 1431 (3d Cir.), cert. denied, 519 U.S. 1020 (1996).

If able to demonstrate deficient performance by counsel, Khalif must also show that counsel's substandard performance actually prejudiced his defense.  Strickland, 466 U.S. at 687. Prejudice is shown if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id. at 694.  The reviewing court must evaluate the

effect of any errors in light of the totality of the evidence. Id. at 695-96.  Thus, the petitioner must establish both deficient performance and resulting prejudice in order to state an ineffective assistance of counsel claim.  Id. at 697.  See also Jacobs, 395 F.3d at 102; Keller, 251 F.3d at 418.

1.  *Calling the State Investigator*

Khalif argues that his trial counsel was ineffective in calling the investigating officer on the defendant's direct case and allowing the introduction of Khalif's whole statement to be admitted accordingly.  The introduction of the crossed-out portion of Khalif's statement to the police was discussed above. This issue was raised by Khalif on direct appeal.

The Appellate Division disagreed with Khalif's contention that trial counsel was ineffective in introducing the statement at trial, which allowed the crossed-out portion to come into evidence as well.  Specifically, the Appellate Division stated that "[t]his portion of the statement may have been the reason defendant was acquitted of capital murder in connection with Fran's death."  (RE20 at p. 11).

Khalif raised the issue again in his state PCR proceeding. In a hearing held on September 16, 1997, the trial court remarked that:

> Whether the defense counsel should have used it or not is a question of trial strategy.  Mr. Khalif was represented by extremely competent and in hindsight extremely effective counsel. ... there were not many options left to the defense

35

> here.  It started out as a capital litigation.  The first
> concern of counsel would have been to save Mr. Khalif's
> life.  There are only two ways to do that: To present to the
> jury evidence that would allow it to find that perhaps the
> acts were not committed knowingly or purposefully, in other
> words, a state of mind defense ... .
>
> There are two ways to accomplish that.  Through the
> presentation of witnesses, including Mr. Khalif and/or
> through presentation of his own words without the necessity
> of calling him to the stand.
>
> Now dealing with the second one first.  In the Court's
> opinion that was highly effective strategy.  It saved Mr.
> Khalif from the potential of damaging cross-examination by
> the State if he had taken the stand and testified
> inconsistently.

(RE44 11:22-12:21).

After reviewing the record, this Court finds nothing to indicate that the state court decisions (which concluded there was no error, and hence, no ineffective assistance of counsel) were based on an unreasonable application of the facts in light of the evidence presented at trial.  Nor were the decisions contrary to established federal law.  The state courts found that the decision by defense counsel was plainly trial strategy, a "highly effective" strategy that was successful in acquitting Khalif of capital murder.  Khalif has not demonstrated that the state court decisions, when evaluated objectively and on the merits, resulted in an outcome that cannot be reasonably justified.  Matteo, 171 F.3d at 891.  Accordingly, this claim of ineffective assistance of counsel is without merit.

36

2.  *Failure to Request a Miranda Hearing*

In his state PCR proceedings, Khalif argued that his counsel was ineffective in failing to request a Miranda hearing with respect to the admission of the statement he gave to police. This claim is clearly without merit.  Khalif's trial counsel cannot be expected to file a motion for a Miranda hearing on the admissibility of the statement given to the police when the State made it known well before trial that it had no intention of introducing the statement at trial.  In fact, at the state PCR hearing on this issue, the court found Khalif's claim to be without merit.  The court stated:

> The State chose not to use Mr. Khalif's statement, his attorney would have no legal entitlement under that circumstances to a Miranda hearing.  Even if he had requested one, it would have been denied.

> There is no legal entitlement since the State did not intend to use it.

(RE44 at 11:18-23).

To establish ineffective assistance of counsel based on a failure to file a motion on this ground, Khalif must be able to show that the motion would have succeeded.  Counsel's failure to file motions does not per se constitute ineffective assistance of counsel.  See Kimmelman v. Morrison, 477 U.S. 365, 383-84 (1986); Jelinek v. Costello, 247 F. Supp.2d 212 (E.D.N.Y. 2003).  Rather, a determination of ineffectiveness depends on whether the motion or objection would have been granted or sustained had it been

37

made.  United States v. Oakley, 827 F.2d 1023, 1025 (5th Cir. 1987).  Thus, "[c]ounsel cannot be faulted for failing to pursue meritless or futile objections."  Johnston v. Love, 940 F. Supp. 738, 776 (E.D. Pa. 1996), aff'd 118 F.3d 1576 (3d Cir.), cert. denied, 522 U.S. 972 (1997); see also Bolender v. Singletary, 16 F.3d 1547, 1573 (11th Cir.), cert. denied, 513 U.S. 1022 (1994)(failure to raise non-meritorious issues does not constitute ineffective assistance of counsel).  Moreover, the filing of pretrial motions "falls squarely within the ambit of trial strategy."  Murray v. Maggio, 736 F.2d 279, 283 (5th Cir. 1984), and Khalif has alleged no facts that would overcome the presumption that counsel's decision in this regard was strategic. Strickland, 466 U.S. at 689.

This Court finds nothing in the record to support Khalif's meritless claim that counsel should have requested a Miranda hearing.  Counsel cannot be expected to raise issues that are plainly frivolous and without merit.  Therefore, on this claim, the Court concludes that Khalif has failed to demonstrate ineffective assistance of trial counsel.

3.  *Failure to File a Motion to Quash the Indictment*

In Ground 12m, Khalif complains that his counsel failed to timely file a motion to quash the indictment.  Specifically, Khalif contends that the indictment returned against him was based on inadequate and knowingly false evidence as presented by

38

the prosecution.  The prosecutor presented only Detective
Defrancisci, who merely recited the information contained in the
police reports and witnesses' statement in the prosecutor's file.
Khalif contends that the prosecutor should have called these
witnesses to testify before the grand jury.

Khalif raised this issue in a state PCR petition.  The trial
court rendered a letter opinion on June 5, 2000, denying relief.
The court found that the trial counsel's failure to object to
Det. Defrancisci's "hearsay testimony does not evidence counsel's
alleged deficient performance because '[a] grand jury may return
an indictment based largely or wholly on hearsay testimony.'
State v. Vasky, 218 N.J. Super. 487, 491 (App. Div. 1987)."
(RE9).  The court further stated that "[s]uch a motion in this
instance would have been meritless and counsel is not obligated
to raise meritless motions.  Therefore, defendant's ineffective
counsel claim fails under the first prong of Strickland."  (RE9).
On appeal, the Appellate Division found that Khalif's argument on
this claim was "without sufficient merit to warrant discussion in
a written opinion, ... and we affirm substantially for the
reasons expressed by Judge Lester in her thorough and well-
reasoned letter opinion dated June 5, 2000."  (RE5).

A claim as to the validity of a state indictment, as opposed
to the fairness of a trial, does not typically rise to the level
of a constitutional deprivation because any such claims alleging

39

error in a state grand jury proceeding are rendered harmless by the subsequent guilty verdict by a petit jury.  <u>See</u> <u>Lopez v. Riley</u>, 865 F.2d 30, 32 (2d Cir. 1989).  <u>See also</u> <u>United States v. Mechanik</u>, 475 U.S. 66, 72-73 (1986); <u>United States v. Enigwe</u>, 17 F. Supp.2d 390, 393 (E.D. Pa. 1998), <u>aff'd</u>, 248 F.3d 1131 (3d Cir. 2000), <u>cert</u>. <u>denied</u>, 531 U.S. 1185 (2001).  Therefore, the petit jury's eventual conviction of Khalif renders harmless Khalif's claim that the indictment was wrongly issued based on hearsay testimony of the investigator Defrancisci.  Moreover, as stated in section 2 above, counsel cannot be expected to raise issues that are plainly frivolous and without merit.  The trial court found that such a motion would have been denied by her as meritless.  Therefore, on this claim, the Court concludes that Khalif has failed to demonstrate ineffective assistance of trial counsel, and this claim for habeas relief will be denied.

In sum, Khalif has failed to show any instances of deficient performance by counsel in his case, which would give rise to a claim of constitutional deprivation.  Therefore, the ineffective assistance of counsel claims are denied on the merits.

E.   <u>Jury Instructions</u>

In Grounds 12f, 12h, and 12k, Khalif asserts that the jury charges were confusing, and that the trial judge should have charged the jury on attempted passion/ provocation manslaughter as a lesser-included offense of attempted murder, and on self

40

defense justification or transferred intent murder.  Khalif
further contends that the trial judge erred in failing to
instruct the jury that it was merely permissible, not mandatory,
to infer intent to take a life if they found that Khalif killed
the victim with a deadly weapon.  This charge allegedly violated
Khalif's right to due process by failing to inform the jury that
such an inference was merely permissible and could be overcome,
thus shifting the burden of proof from the State.

Questions relating to jury charges are normally matters of
state law and are not cognizable in federal habeas review.  See
Engle v. Isaac, 456 U.S. 107 (1982); Henderson v. Kibbe, 431 U.S.
145 (1977); Zettlemoyer v. Fulcomer, 923 F.2d 284, 309 (3d Cir.),
cert. denied, 502 U.S. 902 (1991); Grecco v. O'Lone, 661 F. Supp.
408, 412 (D.N.J. 1987)(Thompson, J.).  Only where the jury
instruction is "so prejudicial as to amount to a violation of due
process and fundamental fairness will a habeas corpus claim lie."
Id.

Where a federal habeas petitioner challenges jury
instructions given in a state criminal proceeding,

> [t]he only question for us is "whether the ailing
> instruction by itself so infected the entire trial that
> the resulting conviction violates due process."  It is
> well established that the instruction "may not be
> judged in artificial isolation," but must be considered
> in the context of the instructions as a whole and the
> trial record.  In addition, in reviewing an ambiguous
> instruction ..., we inquire "whether there is a
> reasonable likelihood that the jury has applied the
> challenged instruction in a way" that violates the

41

> Constitution.  And we also bear in mind our previous
> admonition that we "have defined the category of
> infractions that violate 'fundamental fairness' very
> narrowly."  "Beyond the specific guarantees enumerated
> in the Bill of Rights, the Due Process Clause has
> limited operation."

Estelle v. McGuire, 502 U.S. 62, 72-73 (1991) (citations

omitted).  Thus, the Due Process Clause is violated only where

"the erroneous instructions have operated to lift the burden of

proof on an essential element of an offense as defined by state

law."  Smith v. Horn, 120 F.3d 400, 416 (1997), cert. denied, 522

U.S. 1109 (1998).  See also In re Winship, 397 U.S. 358, 364

(1970) ("the Due Process Clause protects the accused against

conviction except upon proof beyond a reasonable doubt of every

fact necessary to constitute the crime with which he is

charged"); Sandstrom v. Montana, 442 U.S. 510, 523 (1979) )(jury

instructions that suggest a jury may convict without proving each

element of a crime beyond a reasonable doubt violate the

constitutional rights of the accused).

Where such a constitutional error has occurred, it is

subject to "harmless error" analysis.  Smith v. Horn, 120 F.3d at

416-17 (1997); Neder v. United States, 527 U.S. 1, 8-11 (1999).

"[I]f the [federal habeas] court concludes from the record that

the error had a 'substantial and injurious effect or influence'

on the verdict, or if it is in 'grave doubt' whether that is so,

the error cannot be deemed harmless."  Smith v. Horn, 120 F.3d at

418 (citing California v. Roy, 519 U.S. 2, 5 (1996)).  In

evaluating a challenged instruction,

> a single instruction to a jury may not be judged in
> artificial isolation, but must be viewed in the context
> of the overall charge.  If the charge as a whole is
> ambiguous, the question is whether there is a
> reasonable likelihood that the jury has applied the
> challenged instruction in a way that violates the
> Constitution.

Middleton v. McNeil, 541 U.S. 433, 437 (2004) (internal

quotations and citations omitted).

Here, this Court initially observes that the states are free

to define criminal offenses in any way they see fit, within

certain constitutional limitations, even through their lower

courts.  Smith v. Horn, supra at 415 (citing Johnson v.

Rosemeyer, 117 F.3d 104 (3d Cir. 1997)).  A habeas petitioner who

challenges state jury instructions must "point to a federal

requirement that jury instructions on the elements of an offense

. . . must include particular provisions," or "demonstrate that

the jury instructions deprived him of a defense which federal law

provided to him."  Johnson, 117 F.3d at 110.  Federal district

courts simply do not "sit as super state supreme courts for the

purpose of determining whether jury instructions were correct

under state law with respect to the elements of an offense and

defenses to it." Id; see also Geschwendt v. Ryan, 967 F.2d 877,

888-90 (3d Cir.), cert. denied, 506 U.S. 977 (1992).

_____In this case, Khalif contends that the trial court's jury instructions were flawed because they were confusing and inconsistent.  He states that the court failed to charge the jury on attempted passion/provocation manslaughter as a lesser-included offense of attempted murder, even though the court did instruct the jury on passion/provocation manslaughter as a lesser included offense to the charge of murder.  He also alleges error by the court in refusing to instruct the jury on self defense on transferred intent murder as to the killing of Fran Walker.

On appeal, the Appellate Division noted that Khalif's counsel did not request a charge of attempted passion/provocation manslaughter.  Referring to state law, the appellate court found:

> A "trial court does not ... have the obligation on its own meticulously to sift through the entire record in every murder trial to see if some combination of facts and inferences might rationally sustain a manslaughter charge." State v. Choice, 93 N.J. 295, 299 (1985).  Rather, "[i]t is only when the facts 'clearly indicate' the appropriateness of" an unrequested charge that the duty of the trial court to provide the charge arises.  Ibid.  (quoting State v. Powell, 117 N.J. 402 (1990)).

> _____State v. Maurico, 117 N.J. 402 (1990), sets forth the four elements of passion/provocation manslaughter.  They are:

>> [1] The provocation must be adequate; [2] the defendant must not have had time to cool off between the provocation and the slaying; [3] the provocation must have actually impassioned the defendant; and [4] the defendant must not have actually cooled off before the slaying.

> [Id. at 411]

> We are satisfied that the facts of this case do not warrant the charge.  The evidence when viewed most favorably to

defendant, does not clearly indicate that the alleged
provocation was sufficient to arouse the passions of an
ordinary person beyond the power of his or her control.
Moreover, the jury heard the facts concerning self defense
as it related to the attempted murder charge and rejected
them.

(RE20 at pp. 12-13).

The United States Supreme Court, in Beck v. Alabama, 447

U.S. 625 (1980), held that if the evidence can support a lesser,

non-capital charge, the jury must be given that option. Cf.

Purnell v. Hendricks, 2000 WL 1523144, *11 (D. N.J. Oct. 16,

2000) (as passion/provocation charge could not have been

supported by the evidence, the trial court was not in error for

not charging it and counsel was not ineffective for not

requesting it be charged). Here, Khalif fails to raise a federal

claim with respect to this issue. See Kontakis v. Beyer, 19 F.3d

110, 119 (3d Cir.), cert. denied, 513 U.S. 881 (1994) ("Nothing

in Beck permits us to grant habeas relief when a state court

refuses to charge a jury that it may convict a defendant for an

offense when under state law the evidence could not justify the

conviction). Accordingly, the Court will deny relief on this

claim.

Khalif next argues that a self-defense charge should have

been given the jury on the murder count. The trial court denied

this request because there was no evidence to show that Khalif

was acting in self defense with respect to the shooting of Fran

Walker. (RE42 at 19:8-18). The Appellate Division affirmed

45

substantially for the reasons as set forth by the trial judge.
(RE20 at p. 13).  Khalif is unable to point to a federal
requirement that the jury instructions in this case on the issue
of self defense was required, nor can he demonstrate that the
lack of such a jury charge deprived him of a defense which
federal law provided to him.  <u>Johnson</u>, 117 F.3d at 110.
Accordingly, he has not shown a federal constitutional
deprivation entitling him to habeas relief.

Finally, Khalif contends that the trial judge violated due
process when she failed to instruct the jury that the use of a
deadly weapon allows, but does not mandate, an inference as to
the defendant's intent.  This claim is wholly without any basis
in fact.  In fact, the trial judge did so instruct the jury that
the inference was permissible, not mandatory:

> A homicide or a killing with a deadly weapon such as a
> firearm, handgun, in itself *would permit you to draw an*
> *inference* that defendant's purpose was to take life or cause
> serious bodily injury resulting in death.

(RE40 at 69:15-19).

Respondents contend that the court's language did not shift
the burden of proof or present the inference as mandatory.
Moreover, Khalif was acquitted of murder and convicted of
aggravated manslaughter, which would suggest that the jury did
not infer that Khalif intended to take Fran Walker's life, but
was merely reckless.  This Court agrees.  Khalif's claim is
absolutely baseless, and will be denied accordingly.

46

G.   <u>Burglary and Felony Murder Convictions</u>

Khalif next argues that the convictions on the burglary and felony murder charges are against the weight of the evidence.  He raised this claim on direct appeal.  The Appellate Division ruled:

> A trial judge shall not grant a motion to set aside a jury verdict as being against the weight of the evidence unless, "having given due regard to the opportunity of the jury to pass upon the credibility of the witnesses, it clearly appears that there was a miscarriage of justice under the law." <u>Dolson v. Anastasia</u>, 55 N.J. 2, 7 (1969).  A ruling on a motion to set aside a verdict "shall not be reversed unless it clearly appears that there was a miscarriage of justice under the law." <u>R.</u> 2:10-1.  Defendant argues that the jury must have ignored important testimony relevant to the question of his entry into the apartment.  The jury had a choice.  It could have believed defendant entered the apartment with permission to retrieve his belongings or it could have believed he entered without permission to kill Fran and Lamont.  It obviously believed the latter.  We find no "miscarriage of justice under the law." <u>Ibid</u>.

(RE20 at p. 12).

A claim that the jury's verdict was against the weight of the evidence raises a due process concern.  Only where, "after viewing the evidence in the light most favorable to the prosecution, [no] rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" should the writ issue.  <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979).  This standard must be applied "with explicit reference to the elements of the criminal offense as defined by state law." <u>Jackson</u>, 443 U.S. at 324, n.16.  <u>See also</u> <u>Orban v. Vaughn</u>, 123 F.3d 727 (3d Cir. 1997), <u>cert. denied</u>, 522 U.S. 1059 (1998).  As

noted above, state court factual determinations are presumed to be correct.  See Werts v. Vaughn, 228 F.3d 178, 186 (3d Cir. 2000), cert. denied, 532 U.S. 980 (2001).

Upon review of the record, this Court finds that the decision of the Appellate Division is not contrary to, and does not involve an unreasonable application of, clearly established federal law; nor is it based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Accordingly, Khalif is not entitled to relief on this claim.

H.   Prosecutorial Misconduct

In Ground 12i of his petition, Khalif claims that the prosecutor's opening statement contained inflammatory comments, not supported by the evidence, which created substantial prejudice to his right to a fair trial.

Khalif raised this claim on direct appeal.  The Appellate Division summarily rejected it, finding that "after a careful review of the record and brief" petitioner's contentions "are clearly without merit."  (RE20 at p. 16).

As discussed previously in this opinion, habeas review of a claim based on prosecutorial misconduct is limited to determining whether the conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly, 416 U.S. at 643.  "The touchstone of due process

48

analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." Smith v. Phillips, 455 U.S. 209, 219 (1982).  If it does not infect the entire trial, misconduct alone is not enough to warrant a new trial.  Id. at 220.  "A criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments [or conduct] standing alone, for the statements or conduct must be viewed in context."  United States v. Young, 470 U.S. 1, 11 (1985).

However, the U.S. Supreme Court has recognized the obligation of a prosecutor to conduct a criminal prosecution with propriety and fairness.

> He may prosecute with earnestness and vigor – indeed, he should do so.  But, while he may strike hard blows, he is not at liberty to strike foul ones.  It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one. ...  Consequently, improper suggestions, insinuations, and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none.

Berger v. United States, 295 U.S. 78, 88 (1935).  "The line separating acceptable from improper advocacy is not easily drawn; there is often a gray zone.  Prosecutors sometime breach their duty to refrain from overzealous conduct by commenting on the defendant's guilt and offering unsolicited personal views on the evidence."  Young, 470 U.S. at 7.

> The prosecutor's vouching for the credibility of
> witnesses and expressing his personal opinion
> concerning the guilt of the accused pose two dangers:
> such comments can convey the impression that evidence
> not presented to the jury, but known to the prosecutor,
> supports the charges against the defendant and can thus
> jeopardize the defendant's right to be tried solely on
> the basis of the evidence presented to the jury; and
> the prosecutor's opinion carries with it the imprimatur
> of the Government and may induce the jury to trust the
> Government's judgment rather than its own view of the
> evidence.

Id. at 18.

Thus, where this prosecutor's opening remarks are challenged in habeas, "[t]he relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Darden, 477 U.S. at 181 (quoting Donnelly, supra). "Supreme Court precedent counsels that the reviewing court must examine the prosecutor's offensive actions in context and in light of the entire trial, assessing the severity of the conduct, the effect of the curative instructions, and the quantum of evidence against the defendant." Moore v. Morton, 255 F.3d 95, 107 (3d Cir. 2001).

Here, there was no state court finding that the prosecutor's comments during his opening statement were outrageous, improper, or personal, or that they unfairly prejudiced petitioner so as to make the resulting conviction a denial of due process. There is nothing to suggest that the summary decision of the Appellate Division was contrary to, and or involved an unreasonable application of, clearly established federal law. Nor does it

appear from this Court's review of the trial record that the
state court's decision was based on an unreasonable determination
of the facts in light of the evidence presented in the state
court proceedings.  Accordingly, this ground for habeas relief
will be denied.

I.   Ineffective Assistance of Appellate Counsel

     Khalif also broadly asserts that his appellate counsel was
ineffective for failing to raise certain issues on appeal
regarding trial counsel's errors, namely, the failure to raise
the Miranda claim, and failure to make complaints about the jury
instructions.  This claim was raised on Khalif's first PCR
petition in state court, and was denied by the trial court on
September 16, 1997.  On appeal, the Appellate Division found that
Khalif's contentions were without sufficient merit to warrant
discussion, and affirmed the denial of the PCR petition
substantially for the reasons expressed by the trial court in the
September 16, 1997 oral opinion.

     Claims of ineffective assistance of appellate counsel are
evaluated under the Strickland standard previously discussed.
See Wright v. Vaughn, 2004 WL 1687865, *6, n.10 (E.D. Pa. July
26, 2004).  In order to prevail on a claim that appellate counsel
was ineffective, Khalif must show that (1) counsel's performance
fell below an objective standard of reasonableness, and (2) there
was a reasonable probability, but for counsel's deficiency in

51

raising the arguments on appeal, that the conviction would have been reversed on appeal.  <u>See</u> <u>Buehl v. Vaughn</u>, 166 F.3d 163, 173-74 (3d Cir. 1999), <u>cert</u>. <u>dismissed</u>, 527 U.S. 1050 (1999).

Here, Khalif has failed to show that the performance of his appellate counsel was deficient and that he was prejudiced thereby, and in light of the evaluation of this issue by the state courts, this Court cannot conclude that the determination of this issue resulted in a decision that was contrary to, or involved an unreasonable application or determination of law or fact.  <u>Williams v. Taylor</u>, <u>supra</u>.  Accordingly, the Court will deny relief on this claim.[6]

## J.   <u>Cumulative Errors</u>

Khalif next asserts that the cumulative effect of trial errors deprived him of his due process and his constitutional right to a fair and impartial trial.

Even if none of the claims on their own amounts to a constitutional violation, the "cumulative effect of the alleged errors may violate due process."  <u>United States ex rel. Sullivan</u>

_____

[6]  To the extent that Khalif includes all of trial counsel's alleged errors as part of his claim that appellate counsel was ineffective for failing to raise them on appeal, the Court finds that such a claim lacks merit.  For the reasons stated in this Opinion, <u>supra</u>, Khalif has not shown that his appellate counsel's decision not to include these arguments on appeal fell below an objective standard of reasonableness.  More importantly, Khalif has not shown that there is a reasonable probability that had such arguments been presented on appeal, they would have been meritorious.

v. Cuyler, 631 F.2d 14, 17 (3d Cir. 1980); see also Douglas v.
Hendricks, 236 F. Supp.2d 412, 436 (D.N.J. 2002) (Walls, J.) (no
cumulative error when the trial was fair and verdict supported by
sufficient evidence); Pursell v. Horn, 187 F. Supp.2d 260, 374
(W.D. Pa. 2002) ("That the reliability of a state criminal trial
can be substantially undermined by a series of events, none of
which individually amounts to a constitutional violation, is an
idea that has been accepted by nearly every federal court to have
addressed the issue.").[7]  In Marshall v. Hendricks, the Court of
Appeals for the Third Circuit evaluated a cumulative error claim
and found:

> Here, even were we to cumulate all the claimed errors
> and superimpose them over the extensive trial
> proceedings, given the quantity and quality of the
> totality of the evidence presented to the jury, we
> could not conclude that the New Jersey Supreme Court
> unreasonably applied Supreme Court precedent or
> unreasonably determined the facts in making its ruling.

307 F.3d 36, 94 (3d Cir. 2002), cert. denied, 538 U.S. 911
(2003).

This Court has determined that no errors occurred or that,
to the extent errors may have occurred, they were harmless.  A
review of the record reveals that any errors that may have
occurred remain harmless when cumulated, and that the trial was

_____

[7]  Neither the Supreme Court nor the Court of Appeals for
the Third Circuit has established a standard by which a claim of
cumulative error must be determined.  See Pursell, 187 F. Supp.2d
at 374-76 (describing three alternative approaches).

fair and the verdict was supported by ample evidence.  As found in <u>Marshall</u>, <u>supra</u>, Khalif has not demonstrated that the actions of the state courts "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Accordingly, this ground for a writ of habeas corpus will be denied.

K.   <u>Request for an Evidentiary Hearing</u>

    In Ground 12n, Khalif asserts that he is entitled to an evidentiary hearing under N.J. Court Rule 3:22-10.  Respondents state that this claim is not cognizable in a federal habeas petition because it is "wholly frivolous', and because a state court's interpretation of state law is binding on the federal courts.  <u>McCandless v. Beyer</u>, 835 F.2d 58, 61 n.3 (3d Cir. 1987).

    As stated above, matters of state procedural law are not generally reviewable in a federal habeas petition and a federal habeas court will not review state-court determinations on state-law questions."  <u>Estelle</u>, 502 U.S. at 67-68.  Here, it is not for this Court to review on a federal habeas petition whether the state court incorrectly denied Khalif an evidentiary hearing.  Further, it is plain that petitioner was not denied due process or other federally protected right.  The record clearly indicates

that the PCR court correctly applied the state procedural bar and that the Appellate Division also found petitioner's claims to be without merit.  Therefore, this claim by petitioner is denied for failure to state a federal constitutional deprivation.

V.  <u>CERTIFICATE OF APPEALABILITY</u>

This Court next must determine whether a certificate of appealability should issue.  <u>See</u> Third Circuit Local Appellate Rule 22.2.  The Court may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  For the reasons discussed above, this Court's review of the claims advanced by Khalif demonstrates that he has failed to make a substantial showing of the denial of a constitutional right necessary for a certificate of appealability to issue.  Thus, this Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).

<u>**CONCLUSION**</u>

For the foregoing reasons, this Court finds that Khalif's § 2254 habeas petition should be denied on the merits.  A certificate of appealability will not issue.  An appropriate Order accompanies this Opinion.

/s/ Jose L. Linares<br>JOSE L. LINARES,<br>UNITED STATES DISTRICT JUDGE

DATED: September 28, 2005

55